**Norris Lamar BAILEY et al.,**
**Plaintiffs,**

v.

**Alvin M. KELLEY, etc.,**
**Defendant.**

**No. C73–406.**

United States District Court,
N. D. Ohio, E. D.

Nov. 20, 1973.

Opinion on Motion for Preliminary
Injunction Jan. 22, 1974.

Irving Bell, of Summers, Schneider, Burke & Hildebrand, Cleveland, Ohio, for plaintiff.

Richard F. Mitchell, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM and ORDER

BEN C. GREEN, District Judge:

On February 14, 1973, the Internal Revenue Service notified Norris Lamar Bailey that his 1972 tax year had been terminated pursuant to 26 U.S.C. § 6851, and, pursuant to 26 U.S.C. § 6201, assessed against him $25,050.00 in federal income taxes for that year. That assessment was reduced to $8,435.58 on May 10, 1973.

On May 11, 1973, Mabel Dolores Coleman, a sister of Mr. Bailey, was notified by the Internal Revenue Service that a jeopardy assessment in the sum of $7,247.00 was levied against her as a transferee of Norris Lamar Bailey of certain of his assets in the year 1972.

Subsequent to each of those determinations, the Internal Revenue Service seized a 1970 Cadillac automobile titled in Mr. Bailey's name and a 1973 Cadillac titled to Mrs. Coleman.

Plaintiffs thereafter brought this action seeking to enjoin any enforcement of the tax assessments against Mr. Bailey (including sale of either vehicle) until such time as there has been a "judicial determination in the tax court of the United States, and/or a settlement with the District Director of the Internal Revenue Service, and/or a dismissal of said deficiency assessment."

This matter is now before the Court on defendant's motion to dismiss the plaintiffs' amended complaint. In its motion, defendant asserts that 26 U.S.C. § 7421 is a bar against this Court issuing injunctive relief in favor of plaintiffs.[1] That statute provides:

(a) Tax.—Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

(b) Liability of transferee or fiduciary.—No suit shall be maintained in any court for the purpose of restraining the assessment or collection (pursuant to the provisions of chapter 71) of—

(1) the amount of the liability, at law or in equity, of a transferee of property of a taxpayer in respect of any internal revenue tax, . . .

Plaintiffs' response to the Government's motion is that 26 U.S.C. § 7421 has exceptions, some statutory and some judicial, and that certain of those excep-

---

1. It has also been argued that the doctrine of sovereign immunity bars this action as against the District Director of Internal Revenue. Plaintiffs have responded to that contention by stating that as no personal recovery is sought, but rather official action challenged, the immunity doctrine does not apply. Plaintiffs have further stated that an amendment to the complaint could be made to add the United States as a party defendant, so as to cure any deficiency in formal parties. On that basis, the Court does not believe the immunity defense is of substance in this case.

tions apply to their individual situations. Although the jurisdictional defense advanced by the Government is substantially the same as to each plaintiff, the exceptions relied upon by plaintiffs are not the same. Therefore, the Court will treat the motion to dismiss on an individual basis as to each of the plaintiffs.

■■ With regard to plaintiff Bailey, it is the general rule that, except in very rare and compelling circumstances, the federal courts will not entertain actions to enjoin the collection of taxes. In Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the Supreme Court held that only if it is apparent that under the most liberal view of the law and the facts the Government could not establish a claim for taxes may suit for an injunction be maintained. A further restriction was also imposed, in that a plaintiff seeking injunctive relief must also meet the traditional equity test of having no adequate remedy at law. It has accordingly been held that a suit for injunction could not be maintained when the taxpayer had the remedy of paying the tax assessment and suing for refund. Bowen v. United States, 331 F.2d 149 (CA 5, 1964); Sherwood v. Scanlon, 207 F.Supp. 686 (E.D.N.Y., 1962).

■ Measured against these standards, the bulk of plaintiff Bailey's arguments in favor of jurisdiction must fail. It has not been shown that the Government's claim for taxes cannot, under any circumstances, be sustained. Further, it is not established that plaintiff has no adequate remedy available at law.

There is, however, one argument advanced by plaintiff Bailey that warrants further consideration. There is a line of authority, represented by the decision in Schreck v. United States, 301 F.Supp. 1265 (Md., 1969), which holds that the Internal Revenue Service may not avoid the requirements of Section 6213(a) of the Internal Revenue Code by using the Section 6851 termination provisions. Those cases hold that the failure of the Government to issue a "ninety-day letter", thereby precluding the taxpayer from filing an action in tax court for reassessment of his taxes, invalidates the Government's utilization of the levy provisions of the Internal Revenue Code attendant upon the use of the termination provisions of Section 6851. The Schreck decision has been applied in Rambo v. United States, 353 F.Supp. 1021 (W.D.Ky., 1972).

The Government concedes that several district courts have followed the Schreck holding, but asserts that every circuit court deciding the issue has held that the absence of a statutory notice of deficiency, i. e. a "ninety-day letter", does not bar the utilization of Section 6851 by the Government.

The Court has determined that the Rambo ruling is now on appeal to the Sixth Circuit Court of Appeals, and has recently been heard on oral argument. It is plain that whatever decision is handed down in that case will be binding on this Court, and conclusive of the issue under consideration. For that reason, the Court believes that ruling should be deferred on the defendant's motion to dismiss the amended complaint as to plaintiff Bailey until such time as the Rambo case has been ruled upon in the Court of Appeals.

■ In its motion to dismiss as to plaintiff Coleman, the Government argues that 26 U.S.C. § 7421(b) on its face bars injunctions by transferees of a taxpayer's property, such as Mrs. Coleman is alleged to be. While this is a correct statement of law, it is equally true that Section 7421(b) "does not apply to a third party [who is not a transferee within the meaning of the statute] seeking to enjoin the Collector from taking his property to pay taxes of another." Glenn v. American Surety Co., 160 F.2d 977, 981 (CA 6, 1947). In the amended complaint, and by way of affidavit, plaintiff Coleman asserts that she is, and always has been, the true owner of the 1973 Cadillac seized from her. If such allegations are true, this Court would have jurisdiction to enjoin a seizure of assets from Mrs. Coleman made to satisfy the alleged tax liability of Mr. Bailey.

The Government's motion to dismiss the amended complaint tests the legal sufficiency of the complaint to state a claim for relief. While the Government contests the factual allegations made on behalf of Mrs. Coleman, that dispute can only be resolved following a determination of the facts. The complaint, on its face, does state a claim upon which relief could be granted in favor of Mrs. Coleman.

With the amended complaint, there was filed a motion for preliminary injunction on behalf of both plaintiffs. Subsequent to the Government's motion to dismiss the amended complaint, a motion to compel return of property was filed on behalf of both plaintiffs.

In the Court's opinion, the motion to compel return of property as it applies to the 1970 Cadillac seized from Mr. Bailey cannot be ruled upon until such time as the *Rambo* case is decided. Should it develop that the complaint must be dismissed as to Mr. Bailey, then clearly the Court could not order return of the property seized from him.

As to plaintiff Coleman, the Court does not believe that any order can be entered on the motion to return the property at this time. There are several considerations, applicable to any motion seeking interim relief, pertinent thereto which cannot be determined without evidentiary hearing. The Court will, therefore, reserve this matter for determination following a hearing on the motion for preliminary injunction.

The motion of defendant to dismiss the amended complaint is denied as to plaintiff Coleman and held in abeyance as to plaintiff Bailey. The plaintiffs' motions for preliminary injunction and to compel return of property are held in abeyance as to plaintiff Bailey and shall be set for hearing as to plaintiff Coleman, at a date in the near future to be determined by the Court.

It is so ordered.

## ON MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court following hearing upon the motion of plaintiff Mabel Delores Coleman for preliminary injunction. There has also been filed on behalf of plaintiff Coleman a motion to compel return of property, which motion substantially involves the same issues of fact and law as does the motion for preliminary injunction. The relief sought by plaintiff Coleman is an order upon the government to return a certain 1973 Cadillac automobile, which is alleged to be her sole property.

The evidence adduced at the hearing will be set forth in brief summary.

The vehicle in question was ordered in August, 1972 by Mrs. Coleman's brother, Norris Lamar Bailey, from the Conway Cadillac Company. Both Mr. Bailey and Mrs. Coleman testified that at the time the car was ordered Mrs. Coleman was on crutches and unable to get around, and that Mrs. Coleman had instructed her brother to order on her behalf a 1973 Cadillac comparable to a 1970 Cadillac he was then driving.

The initial downpayment was made in cash by Mr. Bailey. All subsequent payments to the time of delivery of the car (excepting that portion of the purchase price which was financed), totalling slightly in excess of $7,000.00, were likewise made by Mr. Bailey, including a payment on the day of delivery when Mr. Bailey and Mr. and Mrs. Coleman were all present at the dealership.

Mr. Bailey and Mrs. Coleman each testified that the funds paid over to Central Cadillac came from Mrs. Coleman. Mr. Coleman testified that she had accumulated the funds over a number of years, secreted in her home. She stated that the reason the transaction was handled in such manner was her desire to surprise her husband with the purchase of the vehicle. There was, however, a discrepancy between the testimony of Mr. Bailey and Mrs. Coleman and the testimony of the Conway Cadillac sales-

man who received the money as to the denominations of the bills with which payment was made. The plaintiffs stated that payment was made in small bills, whereas, the salesman testified he received fifty and one hundred dollar bills. There was also a difference in their testimony as to the sequence and timing of two separate payments made on the same day.

Delivery of the car was made on November 27, 1972. A few days prior thereto, the salesman was first advised that title was to be issued in Mrs. Coleman's name. In earlier discussions with Mr. Bailey the salesman had been advised that the car would not be in Mr. Bailey's name, and there had been some mention of persons other than Mrs. Coleman as possibly taking title. Ohio certificate of title No 187627362 was issued in the name of Mrs. Coleman on December 4, 1972.

At the time the car was delivered, Mr. Bailey was listed as a named insured on the policy covering the vehicle. The Conway Cadillac salesman testified that he had been informed that Mr. Bailey would be driving the car, and that the company which financed the balance on the car required that Mr. Bailey be added as a named insured.

Mr. Bailey received possession of the car from his sister on December 20, 1972, for the purpose of driving to California. Mr. Bailey and Mrs. Coleman both testified that at the time the car was purchased it was anticipated that Mr. Bailey would use the car for that purpose, as his 1970 Cadillac was not in condition to make the trip. Mr. Bailey testified that his reason for going to California was to establish a residence there, and upon so doing he had intended to drive the car back to Cleveland and return it to his sister. However, when the car was seized on March 2, 1973, some ten weeks after Mr. Bailey left Cleveland, it was still in California in the possession of Mrs. Bailey, Mr. Bailey having flown back to Cleveland some time in February because of illness in his family.

When Mr. Bailey took the 1973 Cadillac to California, he left his 1970 Cadillac with Mrs. Coleman. At that time Mrs. Coleman and her husband owned a 1972 Cougar, which had also been purchased in 1972, and two older cars represented as not being in running order. Subsequent to the seizure, the Colemans purchased a 1973 Chrysler, paying for that vehicle by cash withdrawn from a bank.

On the Colemans' 1972 federal income tax return a deduction was taken for the sales tax on the purchase of the Cougar. No deduction was claimed for the sales tax on the Cadillac transaction.

■ There are four criteria to be applied in determining whether a District Court should exercise the discretionary power to issue a preliminary injunction. Those standards are:

1) Has petitioner made a strong showing of probable success at trial?

2) Has petitioner shown irreparable injury?

3) Would issuance of the preliminary injunction cause substantial harm to others?

4) Where lies the public interest? North Avondale Neighborhood Association v. Cincinnati Metropolitan Housing Authority, 464 F.2d 486 (CA 6, 1972). In the Court's opinion, plaintiff Coleman has failed to satisfy these requirements.

■ It is correct, as was stated in Switzer v. Carroll, 358 F.2d 424 (CA 6, 1966), that under Ohio law it is generally held that an individual holding a proper Ohio certificate of title is conclusively presumed to be the owner of the vehicle described therein. That rule, however, has generally been enunicated in cases involving conflicting claims of ownership to a particular vehicle.

The Sixth Circuit Court of Appeals has held that interests other than those appearing on the face of an Ohio certificate of title may be recognized, United States v. Birns, 395 F.2d 943 (1968). In the Birns case, the defendant had

been charged with perjury, in part based upon "a statement that his assets consisted of only $850.00 in currency when in fact it was charged he owned a 1960 Cadillac automobile." The allegedly false statements had been made to the Internal Revenue Service in an offer to compromise a civil judgment for past taxes. The court held as follows:

Finally, we consider the contention that the trial court erred in permitting the introduction of evidence to establish the ownership of a motor vehicle despite the state law which deems the certificate of title as conclusive proof of ownership.

\* \* \* \* \* \*

State law controls in determining the nature of the legal interest which one may have in the property involved here [citation omitted].

The Ohio Certificate of Title law was enacted to prevent thefts and frauds in the transfer of title to motor vehicles, and does not preclude the existence of constructive trusts with regard to the ownership of such vehicles . . . id., at p. 947.

Under the authority of United States v. Birns, supra, this Court does not believe that plaintiff Coleman has made a strong showing of probable success at trial. It is possible, taking into consideration the present record, that when a final determination is made upon the merits the Court could conclude that Mr. Bailey has such an interest in the subject vehicle that, as between Mrs. Coleman and the Internal Revenue Service, it cannot be said that the 1973 Cadillac is the sole property of Mrs. Coleman.

In addition, there are the factors of balancing of the parties' interests and a showing of irreparable injury. After the seizure the Colemans purchased, and have available, to meet their current needs, the 1973 Chrysler. On the other hand, if the 1973 Cadillac is returned to Mrs. Coleman and it is ultimately held that it was properly seized, the government's rights will have been prejudiced.

It is the Court's conclusion that the motion for preliminary injunction and motion to compel return of property must be denied. However, the defendant is ordered not to dispose of the 1973 Cadillac, pending further order of this Court at such time as the Sixth Circuit Court of Appeals rules on the appeal in Rambo v. United States, 353 F.Supp. 1021 (W.D.Ky., 1972).

It is so ordered.